BILOXI REALTY CORPORATION *v.* BITTAR

No. 40053 March 19, 1956 86 So. 2d 14

*Rushing & Guice,* Biloxi, for appellant.

*Mize, Thompson & Mize,* Gulfport, for appellee.

ROBERDS, P. J.

This proceeding involves the duty of a landlord, under provisions of the lease contract, to keep the roof of the leased premises in repair, and its liability for damages resulting in its failure so to do.

These are the applicable provisions of the contract: "If the premises shall be partially damaged by fire, or

any other cause, the same shall be repaired by the Parties of the First Part, (landlord), at their expense, as speedily as practicable, due allowance being made for the time taken for the settlement of insurance claims and otherwise.''

Again, ''Party of the second part does hereby accept said building as is and does hereby agree that any repairs, upkeep and improvements or replacements to said building shall be at his expense, excepting structural repairs and repairs to the roof of said store building * * *''.

The contract was for a period of three years beginning July 17, 1946, and it stipulated that the leased premises were ''* * * to be occupied by the Party of the Second Part as a ladies' ready to wear shop and for no other purpose'' in Biloxi, Mississippi.

■■ ■ The landlord became liable to the tenant for the direct, natural and proximate damages resulting from the breach of the landlord of the quoted provisions of the contract. 32 Am. Jur., pg. 592, Sec. 717.

The proof shows that in the year 1948, as a result of very heavy rains, the roof on the store building began to leak very badly, and, as a result thereof, the stock of goods of the tenant was damaged to the following extent:

In June, 1948, $339.50; in November, 1948, $54.50; in January, 1949, $124.25, and in March, 1949, $926.50. It is also shown that, as a result of the leaks in the roof, the interior walls of the building were badly damaged, and that the tenant paid out the sum of $986.42 to repair and paint the walls. This suit was by the lessee to recover the foregoing amounts.

The county judge tried the case without a jury. He disallowed the item of $986.42, the cost of repairing and painting the interior walls, and he reduced the damage to the stock of merchandise to $750.00, and rendered judgment against the lessor for that amount and costs. From that judgment this appeal was taken.

■■■ Appellant seems to contend that the provisions of the contract imposed no duty upon it to repair, or replace, the roof. After the first damage occurred in June, 1948, appellant did repair the roof, but this was defectively done, and the roof continued to leak, resulting in the subsequent damage as shown above. After all of the stated damage had occurred appellant put a new roof upon the building. We think it was the duty of the landlord to keep the roof in good repair. The lease agreement imposed upon it that duty; besides, as bearing upon the meaning of the contract, as was understood by the parties, the landlord did actually repair the roof and later replaced the old with an entirely new roof.

Appellant says it was not given timely notice of the defects in the roof. 32 Am. Jur., pg. 589, Sec. 713. Immediately upon suffering the damage, as above shown, in June 1948, Bittar did give Mr. Richard Guice, a resident of, and engaged in the real estate business, at Biloxi, notice of the fact of the defective roof, and there is a dispute between the parties as to whether Guice was then the agent of appellant. We do not know how the trial judge decided that question, but it is not necessary to hold that Guice was an agent of appellant to uphold the judgment rendered in the lower court. On July 20, 1948, Bittar wrote appellant, a Mississippi corporation with its main office in New York City, New York, that "the roof is badly in need of repair, and the last heavy rains caused quite a bit of damage. We have called this matter to the attention of Mr. Richard Guice, the local real estate agent, who has written you several times, but failed to receive a reply". On July 22, 1948, appellant, through Mr. Jos. G. Abramson, its President, wrote Bittar, saying "When you state that the roof is badly in need of repair and that you called that condition to the attention of Mr. Richard Guice and that he had written to me several times but failed to receive a reply thereto,

I wish to state that you don't know what you are talking about. In the first place Mr. Richard Guice is not our agent and secondly we have always instructed Mr. Guice to give attention to any repairs whenever the necessity occurs". Guice, as the agent of appellant, did engage a Mr. Tremmel to repair the roof. On October 1, 1948, Bittar wrote Guice as follows: "I am writing this letter to you as you are the agent for Mr. Joseph G. Abramson for my store. You had Tremmel to fix the roof but it still leaks as before. The men who had worked on the roof told me that nothing will stop the leakage unless you put on a completely new roof. The interior of the shop is already ruined and deteriorated and I would not dare to fix it before the roof is completely fixed". On April 1, 1949, Bittar wrote Abramson that, upon opening his store, he found that the rains of March 30th and 31st, had caused "a tremendous amount of leakage from the roof * * *"; that a large part of his stock of merchandise was "soaked through and the colors faded from one to the other. This is a complete loss on our hands.

"Upon our discovery, we called Mr. Richard Guice to see the damage and he stated that he will get Tremmel & Son to fix the roof once and for all. We have taken up this matter with you on previous occasions and only some patching had been done with the same results, so it shows that the store needs a new roof. It is not just in one corner of the building, but east and west. Not only is my merchandise involved, but the walls are in terrible condition from the constant leakage everytime it rains, giving a very bad appearance to my shop." Bittar enclosed with that letter a statement of the damage to his stock of merchandise.

On April 5, 1949, Mr. Abramson replied to the foregoing letter, denying liability, saying he had requested Mr. Edward Colbert of Biloxi "* * * to check into your claim

and to examine the alleged damage and your inventory * * *.''

Mr. Edward Colbert testified that, at the written request of Mr. Abramson, he went to the Bittar store and checked into the situation. He found the walls of the building, and the cabinets and merchandise therein wet and badly damaged. He reported this to Mr. Richard Guice, who contacted Mr. C. J. Saucier, who had been in the roofing and sheet metal business in Biloxi for eighteen years. He, the witness, and Guice and Saucier, examined the roof in April 1949. Saucier said the building would have to have a new roof; that ''It was beyond repair''. Saucier said the building was not proper for use ''on account of the defective roof''. Saucier showed him the defects in the roof. He reported the conditions to Abramson, and that, according to his information, the cost of replacing the roof would be $500.00.

Saucier testified that, at the request of Guice, he, in company with Guice and Colbert, examined the roof in April 1949. He said the roof was beyond repair; that it was necessary to put on an entirely new roof, and he was awarded the job for $455.55. He put on the new roof in May 1949.

 █ Thus it is seen that, aside from whether the first notice to Guice was notice to Biloxi Realty Corporation, it is undisputed that the Corporation did have personal notice of the defective condition of the roof in July 1948. Sometime after this Tremmel tried to repair the roof but this was ineffective to keep out the rains and was reported to the landlord; that finally, in May 1949, a new roof was placed upon the building. It is undisputed that $1,085.25 of the damage occurred after the landlord had notice of the condition of the roof. We are of the opinion the landlord had ample notice of this defective roof and that due diligence to duty under the contract would have prevented occurrence of the damage— certainly all of it except the damage in June 1948. The

trial judge gave judgment for only $750.00, which was less than the last item of damage in March, 1949, in the amount of $926.50. We might add that there is no dispute as to the accuracy of any of the items of damage. Under all of the circumstances we think the judgment should be affirmed.

Affirmed.

*Hall, Lee, Kyle* and *Holmes, JJ.,* concur.